## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **PAULINE BROWN**, individually and on behalf of all similarly situated individuals, | ) ) ) | **Case Number:  2:19-cv-00228** |
| Plaintiff, | ) ) | **Judge** |
| v. | ) ) ) | **Magistrate Judge** |
| **TPUSA, INC.** d/b/a **TELEPERFORMANCE USA** | ) ) ) | **COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendant, | ) ) ) ) | |

Plaintiff, PAULINE BROWN ("Brown" or "Plaintiff"), individually and on behalf of all similarly situated individuals, by and through her undersigned attorneys, hereby brings this Collective and Class Action Complaint against Defendant, TPUSA, INC. d/b/a TELEPERFORMANCE USA ("TPUSA" or "Defendant"), and alleges as follows:

### INTRODUCTION

1.      This is a Class and Collective Action brought by Plaintiff, on behalf of herself and those similarly situated call center employees who were employed at Defendant's call centers, to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and alleged contractual obligations (or unjust enrichment if no contract is found).

2.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's call center, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See generally* DOL Fact Sheet #64, attached hereto as Exhibit 1.

1

3.      Specifically, the DOL stated:

"hours worked" includes **all time** an employee must be on duty, or **on the employer's premises** or at any other prescribed place of work, ***from the beginning of the first principal activity*** of the workday to the end of the last principal activity of the workday . . . . An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.

*See id*. at 2 (emphasis added). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

4.      Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift and post-lunch activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

5.      Further, Plaintiff, and those similarly situated, worked more than 40 hours per workweek without receiving the proper overtime pay for all their overtime hours worked because Defendant failed to properly calculate the overtime pay rate to include non-discretionary bonuses.

6.      Plaintiff seeks a declaration that her rights, the rights of the putative FLSA Class, and the rights of the putative Rule 23 Classes were violated, and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

8.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9.      This Court has supplemental jurisdiction over Plaintiffs' breach of contract or unjust enrichment claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

10.     Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

11.     Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

12.     This Court has personal jurisdiction over Defendant because TPUSA is Registered with the Indiana Secretary of State to conduct business within Indiana, and TPUSA systematically and continuously conducts business within the State of Indiana.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

14.     Plaintiff is an individual who resides in the County of Lake, City of Griffith, Indiana.

15.     Plaintiff was employed by Defendant as an hourly Customer Service Representative

("CSR") from on or around September 15, 2018, until on or around May 10, 2019, in Defendant's Hobart, Indiana call center.

16.     Plaintiff has executed her Consent to Sue form, which is attached hereto, as Exhibit 2.

17.     Defendant "is a strategic partner to the world's leading companies" and is "in 80 countries, serving 170+ markets."[1]

18.     Defendant began its call center operations in the United States in 1993 and currently employs individuals, like Plaintiff, at call centers across the United States, as shown:



[2]

---

[1] *About Us*, Teleperformance, https://www.teleperformance.com/en-us/who-we-are/about-us (last visited June 21, 2019).
[2] *Careers About Us*, Teleperformance, https://careers.teleperformanceusa.com/en-US/page/about-us (last visited June 21, 2019).

19.     Upon information and belief, TPUSA hires call center employees, such as Plaintiff, to "be the eyes and ears for our team, fielding customer inquiries and finding innovative ways to respond . . . . [while] [h]andl[ing] and carefully respond[ing] to all inbound and outbound customer inquiries." *See Customer Service Representative in Hobart IN at Teleperformance US Job Snapshot*, attached hereto as Exhibit 3.

20.     TPUSA is a for-profit corporation and is registered with the Indiana Secretary of State to do business in Indiana. *See Business Information TPUSA, INC.*, attached hereto as Exhibit 4.

21.     TPUSA can be served by its Registered Agent, Corporation Service Company, located at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana, 46204. *See id*.

## GENERAL ALLEGATIONS

22.     Plaintiff was employed by Defendant as an hourly CSR from on or around September 15, 2018, until on or around May 10, 2019, in Defendant's Hobart, Indiana call center.

23.     Defendant assigned Plaintiff to answer and make outbound customer calls for Defendant's client, UnitedHealthcare.

24.     Plaintiff's primary job duties included, but were not limited to, answering calls from customers; answering customer's questions regarding health insurance benefits, copays, and billing; hearing customer's grievances; and making outgoing calls on behalf of UnitedHealthcare's customers to schedule doctor's appointments.

25.     Plaintiff's hourly rate of pay was approximately $11.00 per hour. Additionally, Defendant's pay scheme incorporated the ability for Plaintiff to earn non-discretionary bonuses by meeting set quotas.

26.     At all times relevant to this Action, Plaintiff's compensation included a non-

discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any week she met her set quotas.

27.     Upon information and belief, Defendant failed to compensate Plaintiff the additional $2.00 per hour to all hours Plaintiff worked during the workweeks she met her set quotas.

28.     Throughout Plaintiff's employment with Defendant, she regularly worked at least forty (40) hours per workweek.

29.     Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of her job duties as a call center employee.

30.     Plaintiff was never compensated for this time worked off-the-clock.

31.     29 C.F.R. § 553.221 provides that:

Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

32.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

33.     The FLSA subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records. 29 C.F.R. § 516.1.

34.     An employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee each workweek. *See id*. § 516.2.

35.     Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

6

36.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . . an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id*.

37.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . . the Act." *Id.*

### A.     Pre-Shift and Post-Lunch Off-the-Clock Work.

38.     Plaintiff and all other similarly situated current and former hourly Customer Service Representatives ("CSRs") were tasked with providing Defendant's clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

39.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to arrive at the call center before their scheduled shifts to boot up their computers and launch and log into necessary programs, servers, and applications to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly took ten (10) minutes per

shift, or even more if technical issues arise. Only after this pre-shift procedure was completed were Plaintiff and all other similarly situated current and former hourly CSRs allowed to clock-in to Defendant's timekeeping system at the scheduled start of their shifts.

40.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to log out of their necessary programs, servers, and applications and shut down their computer before taking their unpaid lunch break period.

41.     Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to return to their desks before the scheduled end of their unpaid lunch period because Plaintiff and all other similarly situated current and former hourly CSRs were required undergo the same boot up procedure they followed at the beginning of their shifts. Plaintiff and all other similarly situated current and former hourly CSRs were required to return to their desks before the scheduled end of their unpaid lunch period to ensure they were ready to take their first call at their scheduled shift start. This boot up procedure post-lunch regularly took ten (10) minutes per shift, or even more if technical issues arise. Only after this process was completed were Plaintiffs allowed to clock-in to Defendant's timekeeping system and resume working.

42.     The pre-shift and post-lunch boot up procedures are integral and indispensable to the performance of Plaintiff and all other similarly situated current and former hourly CSRs' principal job duties.

43.     In order to perform their jobs as call center employees assisting Defendant's client via computer and telephone, Plaintiff and all other similarly situated current and former hourly CSRs needed to boot up their computers and launch and log into necessary programs, servers, and applications.

44.     Ensuring Plaintiff and all other similarly situated current and former hourly CSRs were ready to take their first call at their scheduled shift start and following their scheduled lunch breaks was

integral and indispensable to Defendant's business as a "team of interaction experts connect[ing] the biggest and most respected brands on the planet with their customers, always making sure that each interaction matters."[3]

45.     The unpaid pre-shift and post-lunch off-the-clock work performed by Plaintiff and all other similarly situated current and former hourly CSRs directly benefits Defendant.

**B.     Defendant's Policy and Practice of Off-the-Clock Work Defendant's and Defendant's Failure to Consider Non-Discretionary Bonuses in Calculating Overtime Premium Rates Willfully Violates the FLSA.**

46.      At all times relevant, Defendant suffered or permitted Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform off-the-clock pre-shift work by not allowing its employees to clock-in until after the pre-shift procedure was complete.

47.     At all times relevant, Defendant suffered or permitted Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform post-lunch off-the-clock work by not allowing its employees to clock-in until after the post-lunch boot up procedure was complete.

48.     Defendant knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221; *id*. at § 790.8; *id*. at § 785.19(a).

49.     Despite this, Defendant failed to compensate Plaintiff and all other similarly situated current and former hourly CSRs for their off-the-clock pre-shift or post-lunch compensable work performed in any amount.

50.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, required them to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate

---

[3] *About Us*, Teleperformance, https://www.teleperformance.com/en-us/who-we-are/about-us (last visited June 12, 2019).

of one and one-half (1.5) times their regular rate of pay—including the compensable off-the-clock pre-shift or post-lunch work performed.

51.     Despite this, Defendant failed to compensate Plaintiff and all other similarly situated current and former hourly CSRs for their off-the-clock pre-shift or post-lunch compensable work performed in excess of forty (40) hours in a workweek at one and one-half (1.5) times their regular rates of pay.

52.     At all times relevant to this Action, Plaintiff's compensation included a non-discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any week she met her set quotas.

53.     Upon information and belief, Defendant failed to compensate Plaintiff the additional $2.00 per hour to all hours Plaintiff worked during all the workweeks she met her set quotas.

54.     Further, at all times relevant to this Action, Defendant's pay scheme incorporated the ability for all other similarly situated current and former hourly CSRs to earn non-discretionary bonuses through meeting set quotas.

55.     Upon information and belief, Defendant routinely failed to compensate all other similarly situated current and former hourly CSRs the promised non-discretionary per hour bonus through meeting set quotas.

56.     Defendants knew, or should have known, that for purposes of the FLSA that an employee's "regular rate" of pay is determined by adding together the employee's total compensation—which includes the employee's hour rate and non-discretionary incentive payments, such as bonuses and/or commission, and dividing the number by the total number of hours worked by the employee during the week in which the compensation was earned.

57.     Despite this, Defendants suffered and permitted Plaintiff, and others similarly situated,

to work more than forty (40) hours per work week without receiving proper overtime pay by failing to include their non-discretionary incentive pay, such as non-discretionary bonuses, in calculating their regular rate of pay used to pay overtime compensation.

58.      In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan or practice of employing Plaintiff and all other similarly situated current and former hourly CSRs to perform pre-shift or post-lunch compensable work off-the-clock. Further, Defendant adopted and then adhered to its policy, plan or practice of failing to include their non-discretionary incentive pay in calculating their regular rate of pay used to pay overtime compensation. This illegal policy, plan or practice resulted in Plaintiff and all other similarly situated current and former hourly CSRs not being paid correctly for all overtime worked.

## COLLECTIVE ACTION ALLEGATIONS

59.      Plaintiff Brown brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own behalf and on behalf of:

> *All current and former hourly Customer Service Representative or other job titles who performed similar job duties who worked for TPUSA at any time in the last three (3) years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

60.      Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

61.      *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*:  With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employee described is "similarly situated" to Plaintiff.  The class of employees on behalf of whom Plaintiff bring this collective action are similarly situated

because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift or post-lunch compensable work performed in excess of forty (40) hours per workweek at an overtime premium of at least one and one-half (1.5) times their regular rates of pay and Defendant's practices, policy, or plan of failing to include their non-discretionary incentive pay in calculating their regular rate of pay used to pay overtime compensation); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

62.     Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

63.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[4]

---

[4] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its call center agents did not form a contract, Plaintiffs reserve the right to seek Rule 23 class

64.     Plaintiff Brown brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Call Center Agent employees who worked for Teleperformance at any time in the last two (2) years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiffs reserve the right to amend this definition as necessary.

65.     *Numerosity*: The members of the Nationwide Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

66.     *Commonality/Predominance*:  There is a well-defined community of interest among Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

> a.   Whether Defendant offered to pay Plaintiff and the Nationwide Class certain rates per hour for each hour worked as call center employees;
>
> b.   Whether Plaintiff and the Nationwide Class accepted Defendant's offer by performing the essential functions of the job;
>
> c.   Whether Defendant breached the contract by failing to pay Plaintiff and the Nationwide Class for each and every hour worked, whether pre-shift or post-lunch;
>
> d.   Whether Defendant breached the contract by failing to pay Plaintiff and the

certification under Plaintiff's and the Class' quasi-contract claims (Count III).

Nationwide Class the proper overtime rate, including the promised non-discretionary bonuses, as part of the rate calculations; and,

e.   Whether Plaintiff and the Nationwide Class were damaged.

67.    *Typicality*: Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff Brown and all other members of the Nationwide Class suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether the Defendant and the Nationwide Class members were employed under an oral contract to be paid for each and every hour worked by Defendant.

68.    *Adequacy*: Plaintiff Brown will fully and adequately protect the interests of the Nationwide Class. Plaintiff retained national counsel who is qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

69.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would be inefficient, cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient

14

supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

70.     This case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## CAUSES OF ACTION

### COUNT I – VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

71.     Plaintiff re-alleges and incorporate all previous paragraphs herein and further alleges as follows.

72.     At all times relevant to this Action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

73.     Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

74.     Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

75.     At all times relevant to this Action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

76.     Plaintiff were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

77.     Defendant's employees, including Plaintiff, engage in interstate commerce— including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

78.     The position of Customer Service Representative is not exempt from the FLSA.

79.     Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

80.     At all times relevant to this Action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

81.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half (1.5) times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

82.     Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

83.     Defendant violated the FLSA by suffering or permitting Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform off-the-clock pre-shift and post-lunch work by not allowing its employees to clock-in until after the pre-shift and post-lunch procedures were complete.

84.     Defendant violated the FLSA by failing to pay Plaintiffs the federally mandated

overtime premiums for Plaintiff and all other similarly situated current and former hourly CSRs' off-the-clock hours worked in excess of forty (40) hours per workweek.

85.     Defendant violated the FLSA by failing to include non-discretionary incentive pay in calculating Plaintiff and all other similarly situated current and former hourly CSRs' regular rate of pay used to pay overtime compensation.

86.     Defendant's violations of the FLSA were knowing and willful.

87.     By failing to compensate its hourly workers at a rate not less than one and one-half (1.5) times their regular rate of pay for all work performed in excess of forty (40) hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated call former hourly CSRs or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to former hourly call center agents, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

88.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

89.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT

90.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges

as follows:

91.     On or around September 15, 2018, Defendant offered to employ Plaintiff as an hourly CSR, offering to compensate Plaintiff at approximately $11.00 per hour, in addition to a non-discretionary bonus of an additional $2.00 per hour to be applied to *all* hours Plaintiff worked during any week she met her set quotas.

92.     Upon information and belief, Defendant similarly offered to pay the Nationwide Class certain rates per hour for each hour worked as a call center employee, in addition to non-discretionary bonuses. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of their regular business activities.

93.     Plaintiff and the Nationwide Class accepted the offer and worked for Defendant as CSRs or other job titles performing the same or similar job duties.

94.     Plaintiff and the Nationwide Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

95.     Plaintiff's work, and the work of the Nationwide Class, required pre-shift and post-lunch boot up time.

96.     Plaintiff and every other Nationwide Class member performed under their oral contract by doing their jobs, in addition to carrying out the pre-shift and post-lunch off-the-clock activities that Defendant required.

97.     Upon information and belief, Defendant does not allow its employees to clock in to begin being compensated until after the pre-shift and post-lunch boot up procedures are complete.

98.     Despite being required to complete these pre-shift and post-lunch integral job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their work performed in workweeks they worked up to 40 hours per workweek.

99.     By failing to pay Plaintiff and the Nationwide Class for the pre-shift and post-lunch boot up time, Defendant breached its contract with Plaintiff and the Class to pay their hourly rate for each hour worked.

100.    In sum, the facts set forth above establish the following elements and terms of the contract:

f.   Offer: a set hourly rate for each hour worked as a call center employee;

g.   Acceptance: Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

h.   Breach: Defendant did not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and,

i.   Damages: By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be proven at trial.

101.    These claims are appropriate for nationwide class certification under Rules (b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

102.    As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Class were damaged at an amount to be proven at trial.

## COUNT III
## QUASI-CONTRACTUAL REMEDIES, UNJUST ENRICHMENT

103.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows:

104.    Upon information and belief, Plaintiff's and every other Nationwide Class members'

pre-shift and post-lunch boot up time provided valuable work and income for Defendant; namely, compensation to Defendant for completing telephone sales and customer service activity that directly benefited Defendant.

105.   *Pre-Shift and Post-Lunch Boot up Time*: Plaintiff and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time, Plaintiffs and the Nationwide Class worked off-the-clock before their shift began and after ending their unpaid lunch break. Without the pre-shift and post-lunch boot-up time, Plaintiff and the Nationwide Class were unable to take customer calls at their designated start times. Further, upon information and belief, Defendant does not allow their employees to clock in to begin being compensated until after the pre-shift and post-lunch boot up procedures are complete.

106.   As part of their ongoing employment relationships with Defendant, Plaintiff and other Nationwide Class members expected to be paid wages for the time they spent doing their jobs, including necessary pre-shift and post-lunch boot up activities performed each shift.

107.   By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary pre-shift and post-lunch boot up activities, Defendant has been unjustly enriched at the expense of Plaintiff and the Nationwide Class in an amount to be determined at trial.

108.   By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary activities, Defendant has also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes – taxes that would have otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

109.   It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

110.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

111.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Nationwide Class were harmed at an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals, requests the following relief:

a.   An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   An Order certifying this action as a class action for the Rule 23 Breach of Contract Nationwide Class (or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

d.   An Order designating the Named-Plaintiff to act as the Nationwide Class Representatives on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

e.   An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f.   An Order declaring that Defendant violated its obligations under the FLSA;

g.   An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three (3) years for Plaintiff and for the FLSA Class;

h.   An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

i.   An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid hourly wages and non-discretionary bonuses earned by unpaid, in an amount to be proven at trial;

j.   An Order awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this Action;

k.   An Order awarding pre and post-judgment interest to Plaintiffs on these damages; and

l.   An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COME Plaintiff, by and through her Attorneys, and hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: June 25, 2019

By: /s/ *Robert T. Dassow*
Robert T. Dassow, #15145-64
10201 N. Illinois Street, Suite 500
Indianapolis, IN 46290
Telephone: (317) 818-3100
Facsimile: (317) 818-3111

*Local Counsel for Plaintiffs*

Timothy J. Becker (MN Bar No. 256663)*
Molly E. Nephew (MN Bar No. 397607)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
tbecker@johnsonbecker.com
mnephew@johnsonbecker.com

*Trial Counsel for Plaintiffs*

*PHV Anticipated

23